IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CAROLYN FANNIN | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 3-11-CV-0195-BD |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Carolyn Fannin seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons stated herein, the hearing decision is reversed.

I.

Plaintiff, who is HIV-positive, alleges that she is disabled as a result of depression, degenerative joint disease in her left wrist, and mild mental retardation. After her applications for disability and supplemental security income ("SSI") benefits were denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge. That hearing was held on October 6, 2009. At the time of the hearing, plaintiff was 43 years old. She has a sixth-grade education and past work experience as a hand packager, a fast-food worker, and a housekeeper. Plaintiff has not engaged in substantial gainful activity since November 24, 2008.

The ALJ found that plaintiff was not disabled and therefore not entitled to disability or SSI benefits. Although the medical evidence established that plaintiff suffered from severe degenerative joint disease and depression, the judge concluded that the severity of those impairments did not meet

or equal any impairment listed in the social security regulations. The ALJ further determined that plaintiff had the residual functional capacity to perform sedentary work with some manipulative and non-exertional limitations, but could not return to her past relevant employment. Relying on the testimony of a vocational expert, the judge found that plaintiff was capable of working as a nut sorter, a dowel inspector, and a lens inserter -- jobs that exist in significant numbers in the national economy. Plaintiff appealed that decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal district court.

II.

In three grounds for relief, plaintiff contends that: (1) the ALJ did not properly evaluate her intellectual functioning at steps 2 and 3 of the sequential evaluation process; (2) the ALJ failed to explain the weight given to medical opinion evidence; and (3) the ALJ did not account for the limited use of her left hand in assessing residual functional capacity.

A.

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *see also Austin v. Shalala*, 994 F.2d 1170, 1174 (5th Cir. 1993). It is more than a scintilla but less than a preponderance. *See Richardson*, 91 S.Ct. at 1427. The district court may not reweigh the evidence or substitute its judgment for that of the Commissioner, but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met.

42 U.S.C. § 423(a).  The Act defines "disability" as the inability to engage in substantial gainful

activity by reason of any medically determinable physical or mental impairment that can be expected

to result in death or last for a continued period of 12 months.  *Id.* § 423(d)(1)(A); *see also Cook v.*

*Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).  The Commissioner has promulgated a five-step

sequential evaluation process that must be followed in making a disability determination:

1.  The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity.  A claimant who is working is not disabled regardless of the medical findings.

2.  The hearing officer must determine whether the claimed impairment is "severe."  A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.  This determination must be made solely on the basis of the medical evidence.

3.  The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.  This determination is made using only medical evidence.

4.  If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5.  If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy.  This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See generally*, 20 C.F.R. § 404.1520(b)-(f).  The claimant has the initial burden of establishing a

disability in the first four steps of this analysis.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107

S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987).  The burden then shifts to the Commissioner to show

that the claimant is capable of performing other work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995), *citing Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *Id.* However, procedural perfection is not required. The court will reverse an administrative ruling only if the claimant establishes prejudice. *See Smith v. Chater*, 962 F.Supp. 980, 984 (N.D. Tex. 1997).

## B.

Among the arguments made by plaintiff is a single ground that compels remand -- the ALJ did not explain the weight given to the opinion of Dr. Leigh McCary, a state agency medical consultant, as required by SSR 96-6p. State agency medical consultants "are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(f)(2)(i) & 416.927(f)(2)(i). As such, their findings and opinions must be considered as opinion evidence. *Id.* Although not bound by the opinions of state agency medical consultants, an ALJ "may not ignore these opinions and must explain the weight given to the opinions in their decisions." SSR 96-6p, 1996 WL 374180 at *2 (SSA Jul. 2,

1996); *see also Renfro v. Astrue*, No. 3-09-CV-2400-M-BH, 2010 WL 3359571 at *8 (N.D. Tex. Jul. 27, 2010), *rec. adopted*, 2010 WL 3359565 (N.D. Tex. Aug. 25, 2010).

In a physical residual functional capacity assessment dated April 6, 2009, Dr. McCary determined that plaintiff was limited to "only occasional" handling and fingering with her left, dominant hand "due to ulnar radial injury." (Tr. at 359). Despite this opinion, the ALJ concluded that plaintiff had the ability to "frequently, but not constantly, reach, handle, and finger[.]" (*Id.* at 18). With respect to plaintiff's left wrist condition, the ALJ wrote:

> There is no evidence the claimant experienced pain and functional limitation during [the two years preceding plaintiff's alleged onset date]. In fact, the first time the claimant, whose medical history includes a 2004 repair of a tear of the left scapholunate ligament, mentioned any exacerbated symptomatology was in December 2008, when she reported a 3-month history of "mild tenderness" in her left wrist with repetitive movement. Notably, Magnetic Resonance Imaging performed a few weeks later revealed minimal degenerative hypertrophy at the distal radioulnar joint. Considering these facts, and the results of a January 24, 2009 physical examination that revealed slight swelling in the left hand, atrophy of the left hand radius muscle and decreased reflexes in the brachioradialis, but intact muscle strength of 5/5 and full range of motion, the undersigned is not convinced the claimant was precluded from working on November 24, 2008, her alleged onset date.
>
> At most, this evidence suggests some moderate functional limitations secondary to atrophy of the left radius muscle, symptomatology that *would preclude the claimant* from lifting/carrying more than 10 pounds frequently *or frequently engaging in handling and fingering with either hand.*
>
> *  *  *  *
>
> Considering these facts, and treatment records from 2009, which show the claimant continued to be treated very conservatively for wrist pain with 800 mg. of Ibuprofen and a wrist splint, the undersigned finds the degree of limitation alleged far exceeds the objective evidence. In reaching this determination, the undersigned notes while the claimant required extensive treatment and surgery on her left wrist in the 2002-03 [*sic*], the evidence shows she recovered

> from this injury returning to gainful work for more than two years.
> Currently, progress notes, which confirm no neurological
> abnormalities, such as weakness or decreased sensation, suggest at
> most mild to moderate symptoms.

(*Id.* at 19) (emphasis added) (internal citations omitted). The only mention of a state agency physician anywhere in the hearing decision came after a four-paragraph analysis of plaintiff's alleged mental impairments, wherein the ALJ broadly stated, "This decision is based on updated evidence that was not available for review by the State Agency, and a different interpretation of the evidence reviewed by the State Agency physician." (*Id.* at 21).

It is not at all clear from the hearing decision what weight, if any, the ALJ gave to Dr. McCary's opinion that plaintiff was limited to "only occasional" handling and fingering with her left hand. If anything, it appears that the ALJ may have given some weight to this opinion by recognizing that, "[a]t most, [the] evidence suggests some moderate functional limitations secondary to atrophy of the left radius muscle, symptomatology that would preclude the claimant from . . . frequently engaging in handling and fingering with either hand." (*See id.* at 19). Yet the ALJ seemingly ignored the limitations noted by Dr. McCary, finding that plaintiff "could frequently, but not constantly, reach, handle, and finger[.]" (*Id.* at 18). No explanation was offered by the ALJ for rejecting Dr. McCary's opinion, other than a vague reference to "updated evidence" that was not available to her.

The Commissioner argues that the requirements of SSR 96-6p were met by the ALJ's statement that her decision was based on "updated evidence that was not available for review by the State Agency, and a different interpretation of the evidence reviewed by the State Agency physician." Indeed, that was the holding in *Morgan v. Comm'r of Soc. Sec. Admin.*, No. 3-10-CV-1061-BF, 2011 WL 4528423 (N.D. Tex. Sept. 30, 2011). However, unlike the instant case, nothing in *Morgan*

suggests that the ALJ gave *any* weight to the opinions of state agency consultants. Rather, it was apparent from the hearing decision that the ALJ gave their opinions "no weight" at all. *Id.* at *5. Here, the ALJ recognized that there was evidence in the record that plaintiff may be precluded from "frequently engaging in handling and fingering with either hand." (*See* Tr. at 19). That evidence came from Dr. McCary. Because the ALJ gave at least *some* weight to Dr. McCary's opinion, she was required to explain the weight so given. *See, e.g. Anderson v. Astrue*, No. 2-08-CV-165, 2011 WL 1641766 at *7 (N.D. Tex. Apr. 22, 2011), *rec. adopted*, 2011 WL 1667466 (N.D. Tex. May 2, 2011) (failure of ALJ to explicitly discuss medical opinions violated SSR 96-6p); *Jackson v. Astrue*, No. 4-11-CV-0028-Y, 2011 WL 4943547 at *4 (N.D. Tex. Aug. 23, 2011), *rec. adopted*, 2011 WL 4940998 (N.D. Tex. Oct. 17, 2011) (same as to ALJ's failure to "explicitly ascribe[ ] a weight to all of the medical opinions").

    In addition, the state agency consultants in *Morgan* did not have access to over one hundred pages of medical records spanning more than two years, including a battery of tests conducted by a specialist who found no significant abnormalities. *See Morgan*, 2011 WL 4528423 at *2, 4-6. By contrast, the only evidence cited by the ALJ that was not available to Dr. McCary are two treatment notes from Parkland Hospital dated March 11, 2009 and July 6, 2009, indicating that plaintiff's wrist condition was treated conservatively with Ibuprofen and a splint. (*Id.* at 426, 444).[1] However, those records do not indicate whether plaintiff's wrist condition or the manipulative limitations noted by Dr. McCary improved as a result of treatment. Thus, the treatment notes would not form a proper basis for rejecting Dr. McCary's opinion. *Cf. Murdock v. Astrue*, No. 4-09-CV-327-Y, 2010 WL

---

[1] The ALJ also cites to page five of Exhibit 10F, which allegedly confirms that plaintiff has "no neurological abnormalities, such as weakness or decreased sensation, suggest[ing] at most mild to moderate symptoms." (*See* Tr. at 19, *citing* Exhibit 10F at p. 5). Not only does this page not appear in the record, (*see* Tr. at 368-70), but a consultive examination performed by Dr. Cecilier Chen, an internal medicine specialist, revealed that plaintiff experienced diminished sensation in her upper left arm "as per claimed." (*Id.* at 281).

3448084 at *7 (N.D. Tex. Aug. 3, 2010), *rec. adopted*, 2010 WL 3448080 (N.D. Tex. Sep. 1, 2010), *citing Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988) (ALJ justified in rejecting opinion of state medical consultant where subsequent treatment records showed that plaintiff "quickly responded to routine care and medications and stabilized at a very functional level").

Nor was this error harmless. The ALJ concluded that plaintiff could work as a nut sorter, a dowel inspector, and a lens inserter -- all of which require frequent reaching and handling. *See Dictionary of Occupational Titles* §§ 521.687-086 (nut sorter), 669.687-014 (dowel inspector) & 713.687-026 (lens inserter) (4th ed. 1991). Had the ALJ properly weighed Dr. McCary's opinion, she might well have determined, as suggested in her decision, that plaintiff was *precluded* from performing frequent handling and fingering and, therefore, could not perform any of the jobs. Under these circumstances, remand is required. *See Gardner v. Astrue*, No. H-08-0129, 2009 WL 7765819 at *8 (S.D. Tex. Mar. 26, 2009) (remanding case where ALJ failed to address state agency consultant's opinions insofar as those opinions differed from his own residual functional capacity assessment).[2]

## CONCLUSION

The hearing decision is reversed, and this case is remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

SO ORDERED.

DATED: February 28, 2012.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE

---

[2] The court notes that at least one state agency medical consultant, Dr. Terry Collier, found that plaintiff had no manipulative limitations that would preclude any reaching, handling, or fingering activities. (*See* Tr. at 290). However, it is unclear whether the ALJ relied on this finding, and it is not mentioned anywhere in the brief filed by the Commissioner. Even if the ALJ decides to rely on Dr. Collier's residual functional capacity assessment on remand, she still must explain the weight given to Dr. McCary's contrary opinion.